Yes, sir. May it please the court, Jason Carr appearing on behalf of appellant Greg Carter. There are many aspects to this case, some interest, legal complexities, unknown facts, but at bottom, the core of this case is my client is paying money that he does not owe on penalty of being sent to prison. Now what are the complexities in this case? At its real essence is a Santabella issue, really, a breach of the plea agreement. Now, admittedly, it's somewhat complex because the plea agreement that's being breached is the co-defendant's. And this is a product of the fact that the restitution was ordered jointly and separately. And the co-defendant, of course, was with the government in this case and had some ability to negotiate the case because she actually testified at the trial against my client. Kagan It would be helpful to me to begin by trying to situate what we are doing here. Are you trying to – are you claiming that there was a violation of the judgment? Are you claiming that you're trying to modify the judgment? I mean, because there are jurisdictional problems, depending what it is you're trying to do. You're trying to modify the terms of supervised release. What is it that you're doing here? That's a key question. And it is important to know what I am not trying to do. What I am not trying to do is modify the judgment, attack the restitution order that is in the judgment, attack the way it was – the amount was calculated, essentially attack anything about the judgment or the restitution order. It is fine and valid. In fact, what we're seeking here is to have it enforced that the agreement for the restitution was that the forfeited assets would be applied to the restitution obligation. They were. And would be the whole of it. In other words, what was entered was $503,000 or whatever, but you're essentially saying the understanding was that what was really meant was the forfeited assets, whatever they bring in. Right. And in the plea agreement itself that is important, which is on 92 of the record, this is the Susan Carter plea agreement, but it's set forth in the – the agreement essentially says that the government – well, I'm sorry, that's not her plea agreement, but what the government agreed to was that the assets that were in the forfeiture order in count one of the superseding indictment of the forfeiture allegation will be applied and credited to the order of restitution. And they were. And they were applied and credited. But let me help you out for a moment. I don't think this case is as complex as you suggest. I think we need to go back to some basic principles. Let me also assume for the moment we have jurisdiction. Let's take that argument, set it aside and assume we have jurisdiction. Forfeiture and restitution are two different legal principles, correct? Yes. And criminal defendants are not entitled to have forfeited assets applied against restitution. That's not an automatic thing under Bright, Ninth Circuit authority, correct? That is – that is true. The forfeiture statute allows for the government to do that, but it does not have to. That's correct. But it's contracted to do that in this case. And in this case, the district judge, for some reason, with the agreement of the government, decided to have the forfeiture assets apply to restitution, correct? Yes. And restitution is money for the victims. Yes, the airlines in this case. That's correct. And so you caught a break, in my view, because the district judge, instead of determining a restitution amount, that is, what was the victim's actual loss in this case, decided to say, well, we have these forfeited assets, let's make that sum the restitution. Are we with me so far? Are you with me so far? Yes. Okay. And so you – you caught a second break there, in effect, because of the commingling, if you will, of restitution and forfeiture, and then reducing, really, what should have been a higher restitution amount, because restitution was, what, a million or so? No, that's not clear, Your Honor. I mean, the government – I mean the actual victim loss. It was higher than 506,000. It could have been. It could not have been. It's hard to say because of the nature of the loss in this case, what the actual loss to the airlines was because of the fact – nobody really knows what they could have actually sold the tickets for and the government itself concedes at the sentencing, look, that the sentencing guideline loss amount really has no relation to the restitution. Well, that can be a different amount. It's not uncommon for the guideline calculation victim loss number to be different than the restitution number. That happens. It was based on intended loss in this case. Got you. Okay. So everybody knows at this point that the restitution amount is about 506,000 and that the forfeited assets are going to be applied toward that amount. Your client apparently had an expectation that that would take care of it, correct? Based on what the district court told him at sentencing, yes. Well, let's set that aside for the moment. Let's agree, can't we, that it's a little muddied there? The district court perhaps could have articulated a little better, but he certainly in his motion for clarification order indicated that what he meant to say was there would be a credit of the forfeited assets toward restitution. Agreed? Yes, that's what he said in the clarification. Okay. What would have happened if the amount collected by the government on the forfeited assets exceeded 506,000? Who gets that money? The government would have used it for whatever purposes they wanted. So it would not have been your client's money or the co-defendant's money? No. In fact, that's why the government struck the bargain, in my estimation, because they thought they were going to make a tidy little sum off it. That's right. At the time, is there anything in the record at the time of sentencing when the order was issued as to how many loons were on the property that was purchased? We're not talking about a bank account where we know exactly how much money is there. We've got vehicles, we have property, and we have money. So by necessity, there had to be an estimate of what that amount would be, correct? Yes. I want to get to there's some ñ there's a nuance to that question, but, yes, there was some unknowns. But in my estimate, it should have been unknown because it should have been evaluated at that time under the law. Nobody evaluated it at that time, did they? But it should have been. No requirement under the law that forfeited assets be valued at the time of sentencing. Is there? There is a ñ there is actually a law, at least in the ñ admittedly, it would be somewhat of an extension of it. But the law is pretty clear that once there's a transfer of title of property, either in the restitution or forfeiture aspects, that the evaluation has to occur at the time that dominion and control is lost by the possessor. Well, what actually happened here? Did the government sit on the assets? Is that what happened? That's an interesting aspect of this case. And one thing I wasn't ñ I've never been able to quite figure it out. But the government actually seized the two properties in this case before indictment was ever issued. That happens. That's not unusual. Right. And then they ended up selling them. They tried to proceed by civil forfeiture, and they abandoned that and went to criminal. But by some mistake by the government, as near as I could tell, they sold the property anyways in 2004 before they really had the right to do it. Well. And they should have known what they got. I mean, I assumed that this all came about because they sold it much later. You're telling me the problem is they sold it much earlier. Right. That is ñ I mean, and, you know, my brief is confusing. It took me a while to figure it out. But in one thing ñ But if that's true, how could they have had the wrong number? I mean, the government stood up there and said, during the original sentencing, the government has done an exhaustive financial search, such and such, such and such, and therefore, because of the unlikelihood of any future collectability of an amount in excess of that which we've already seized, a $505,000 worth of assets, it's better to enter a restitution amount at that amount as opposed to complicating it, not only these proceedings, but future proceedings, in terms of trying to collect something that's not theirs. So they're ñ they had a number, and if they had a number and they'd already sold the property, how could it be a wrong number? Well, because there was more assets. I mean, there was the Rolls-Royce and such that they hadn't sold yet, which they didn't end up selling for years later and drove up thousands of dollars' worth of expenses, which is another aspect of this case, which is that when you ñ in the debtor-creditor situation, the creditor has an obligation of fiduciary duty not to engage in wastage and spoilage to minimize their losses. That did not seem to occur to them. But it seems to me that, again, assuming jurisdiction, what I would like your comment ñ and the jurisdiction ñ it seems to me that what this case is, is simply you're saying that they're violating the judgment by trying to collect during ñ and supervise release money that is already ñ that isn't due. So I don't see what the jurisdiction problem is. But so assuming that, why ñ the real problem, which Judge O'Hara sort of touched on, is it is certainly possible to read the earlier proceedings the way you're reading them and, in fact, left to my diocese, that's how I would read it. But the problem is the judge who imposed it didn't read it that way on the ñ on the clarification motions. What do we do with that when we have the judge who issued this order saying that's not what I meant? Well, then it goes to the government's argument that you can't ñ that they're using it as meat. You can't modify the judgment post-talk in a way that the judgment was what it was at the time. So why does that lead to? Does it say that we read the original proceedings and the original judgment de novo, just ignoring what the district judge who's now saying about it, or that we defer to him and we ñ but we say whether that we ñ that it's an unreasonable reading, or how do we do it? Well, the ñ well, to not totally answer that question, I will note that ñ Well, why don't you totally answer the question? Okay, I'll answer the question. I think that it's a ñ that you have to rely on the ñ the oral pronouncements of the judge at the ñ at the sentencing. That's what's controlling. And at that sentencing, he said that the restitution was paid by the forfeited assets. It's on page 150 of the excerpt for record. But another ñ what shores that up is that the judgment in this case says, you know, the condition of supervised release is that you pay restitution in accordance with the schedule of payments in the case. And there is no schedule of payments. But there is no schedule of payments. And why? Because the judge thought that the restitution was paid. Why did the co-defendants pay money if the forfeited assets were to satisfy the entire amount of restitution? Why did the co-defendants pay some ñ what was it, $16,000? It was ñ it was ñ $13,000. It was garnished from ñ the co-defendants are willing to pay. Why didn't they object? They shouldn't have garnished because, under your theory, the forfeited assets were satisfying restitution. I'm out of time, but if I can answer that. Go ahead, please. The co-defendants have been with me the whole way. And I could say I probably made a mistake by not bringing them in to the case with me. But I thought I would engender a conflict by doing that, especially since one of the co-defendants cooperated against my client. But they, like, actually came to my office and filled out the paperwork. They're objecting to this as well. And it was seized from their IRS return, the payments that they made. And they are also, although Hershey provides releases over Susan Carter, they also had to pay under penalty of going to prison as well, which is another jurisdictional aspect of this case is maybe I could have waited, told Carter, don't pay, and then we'll face the revocation and appeal that. This seemed like a better way to proceed, though. Okay. Thank you very much. Ms. White. You look familiar, too. Welcome back. Good to see you again. Good morning. May it please the Court, Elizabeth White for the United States. There's a lot here, and I'm not sure exactly where to start, but. But let's start with the jurisdictional question. I mean, why – if one views this as a – as saying that the judgment – this is a challenge that – well, let's suppose that the judgment said, pay $300,000, and the – and after he was released, they said you owe $200,000 more. And somebody came in, and you have to pay that as a condition of supervised release. Surely he could come in and say, well, wait a minute, I don't owe $200,000 more. If – if after being released from prison, the probation office says you owe money that you don't owe. Right. Yes. Okay. So that's what this case is. It's either right or wrong, but I don't see the jurisdictional problem. I think that the issue here – and it does – I mean, it does go back to how you read the comments that the judge made at that meeting. No, but this jurisdictional question doesn't. He is saying that the district judge said you owe – that the amount you owe is whatever these assets will bring in, and so I can't owe anything else. Right. And he's either right or wrong about that, but I don't see the jurisdictional problem. I think that if that is what the judge said at sentencing, I would agree with the jurisdictional. Okay. And it's a question – it isn't what he said. The question is what is the challenge now. The challenge now is to say that that's what he said. Yes. They're either right or wrong about that. Yes. Okay. So I don't see the jurisdictional problem. Okay. Yes. And so then we get to the – so then we get to the heart of it, which is that that's not what the judge said. All right. Well, that's a different problem. But I thought your argument was a jurisdictional problem. Yes. And I'll just move on to the substance, because I think that – I think that whatever argument I might want to make about jurisdiction, I wouldn't win. So we'll move on. And what the Court said – and he said it three times at the sentencing hearing. And this is at the excerpt of Record 141. He says, okay, I am prepared to go ahead and impose sentence. And then on 142, he says, in terms of restitution, restitution of $505,781.01 will be a joint requirement, joint and several. And then later on that same page, he reiterated. And so restitution will be in the amount of 505,781.01. Then he talks about the loss calculation, because the defendant had challenged the loss calculation for the guidelines. And the judge said – the judge made a finding of loss to the airline victims of 1,485,000. And then he says on page 147, Probation has recommended, I think with some charity, that restitution be imposed in the amount consistent with what was ordered on the co-defendant. The co-defendant who cooperated, who pleaded guilty, who we did – who the government did have a deal with. Ginsburg. But that number was chosen for a reason that had nothing to do with the purported value of these assets. Yes. With the estimated. And it was very clear all along. But the number has no independent significance, other than as the value of the assets. Exactly, yes. And it was – and it was very clear at Susan Carter's hearing. And this is one thing I really do agree with. She was sentenced first? She was sentenced first, yes. She was sentenced first. And at her hearing, you're telling me that the district judge, with some, quote-unquote, charity, decided to make the restitution amount the approximate value of the forfeited assets. Well. Or that was the recommendation of pretrial services. That was the recommendation. And that's what the judge ordered. Okay. And you agreed with that. And in fact, and this is a point that I do want to make, because I don't take claims of breaching plea agreements lightly. The agreement that we had with Susan Carter, and that's in the record – it's not in the excerpt of record, but it's at 307. It was an attachment to one of the government's exhibits. What we agreed in the plea agreement was that we would recommend that the judge issue restitution in the amount of the liquidated value of the assets. And that is what we did. At Susan Carter's sentencing hearing, which is the docket number 291, we actually proposed language. We said, here's the language that we would like you to enter into the judgment against Susan Carter. And so the judge, making it joint and several liability with the defendants, used the same figure for this defendant. Right. But before that, you know, what we had said is we wanted the judge, we gave the judge language so that the amount of restitution would be whatever the actual proceeds ended up being of these assets once we sold them, which we estimated to be around 500,000, but we wanted this language to make clear the judge did not take our recommendation. The judge issued a some certain amount of 505,000 75,780,101 as a some certain amount, even though we had asked him in full compliance with our obligations under the plea agreement. Is there anything in the sentencing hearing that said, Judge, I understand your order. Do you understand that what you're doing is different from what we recommended? Was there any colloquy about that? There wasn't. But there was, you know, he, at the beginning of the hearing, he read, because he had the sentencing memos, he read the language that we had requested to make. Frankly, it's easier to put a fixed sum in. It's more definite. It's easier to monitor than saying, well, it's going to be some number and it's going to be about. Yes. I mean, I don't know that I would ever, frankly, give a vague number that wasn't precise. But regardless. So, but in this sentencing hearing, the government essentially said pretty much the same thing. He said that we're confident there's nothing else there, and because of the unlikelihood of any future collectability in an amount in excess of that which we've already seized, the $500,000 worth of assets, it's better to enter the restitution amount at that amount, as opposed to complicating not only these proceedings, but future proceedings, I presume, meaning these proceedings. And I think that's a very good point, Your Honor, in terms of trying to collect something that's not there. The court says you're suggesting it might cost more to pursue something that you believe is probably uncollectable in any event. Yes, Your Honor. Certainly that dialogue indicates that the what was intended was this was all of it. And I will just add to that, that in our sentencing memo, and this is another point that we keep at, we had no deal with Greg Carter, with this defendant. There was no deal. There was no, there was no deal. He went to trial. He was found guilty. And the judge issued a forfeiture. The judge issued a restitution order. And so all of this, you know, throughout his brief, he says that there was some sort of agreement with the government that he would forego challenging the or that he would voluntarily forfeit this stuff in exchange for the government's agreement. There was no voluntary anything. He was convicted at trial. There was a forfeiture order. There was a restitution order. In our sentencing memo for this defendant, we asked the Court to impose restitution of $1.4 million. You understand the regulations for determining restitution place on the district judge the obligation to come up with the loss to the victims, irrespective of collectability. Exactly. In my view, if there was an error here, it was an error in the judge adopting a different standard and coming up with an amount. And I think that that's probably the case. The nature of this offense, the ultimate victims were the airlines, but, I mean, the ultimate financial victims were the airlines. The folks who lost their businesses and livelihoods were these single-person travel agents in Las Vegas. And I think that what happened is because, you know, the local travel agents in Las Vegas, several of whom went bankrupt and lost everything, were on the hook for this money to the airlines, we stepped in and said, here, let us try to do this. We've got about a half a million. Can I go back to the sentencing hearing? Yes. The judge then said at the end, I have imposed a 70-month custodial sentence, all of the counts to run concurrent, and I've ordered restitution in the amount of $505,000 that are joint and central. That has been paid, I understand, by what has been taken by the government. And I was actually, as I was reciting, that was the very next thing I was going to say, and I got distracted. But, no, he did. So the third time. It just seems clear that that was everybody's understanding. This is all of it. Yes. The third time that he imposed this, some certain $505,000, he said, and I understand that that has already been paid. Well, that was that, I mean, it hadn't. That was incorrect. Well, except if you mean it has been paid by the forfeiture assets, whatever they're worth. But they're not worth $500,000. I mean, but the order was $505,700. Well, they were at some point. No. Or at least people thought they were. Well, see, and that's and actually I disagree with that. That was always, if you go look, if you look at Susan Carter's sentencing hearing, that was always an estimated value. Those, some of the assets had been sold, some of them hadn't. That was, it was always very clear that that was an estimated value, which is why at Susan's hearing, we actually asked the judge to put in different language, not to make it a sum certain, and he made it a sum certain, and he made it a condition of her supervised release that any money that was left to be paid had to be paid as a condition of supervised release. But this supervised release doesn't. That's the other problem here, which is that the terms of supervised release as originally imposed do not have any schedule for payment or any specific statement that there is anything left out to be paid. And that, yes, that's correct. So why isn't that, A, confirmation of what was intended, B, even if it isn't confirmation of what was intended, at least limiting on what is available now for enduring supervised relief? I would suspect, and I don't know this for sure because I don't do enough work in the district court, but I would suppose that if a judge orders a sum certain amount of restitution as part of the judgment, here's your term of imprisonment, here's your restitution, here's your fine. Unless it's a condition of supervised release, it's not a condition of supervised release. Well, but what I'm saying is, is that if a judge orders restitution as part of the judgment and does not include a schedule of payment as a term of supervised release, that doesn't mean that the defendant doesn't – I mean, that doesn't mean it's not a term of – it's not a condition of supervised release, which is the way you're trying to impose it. No, but what I'm saying is, is that it doesn't void the restitution order. It may not, but right now, as I understand it, it is being treated as a condition of supervised release. Yes. It's listed in the terms of conditions of supervised release. It is. Yes, that he paid. Briefly, the civil forfeiture criminal, it's a bit confusing to me, and your opponent has commented on it as well. I agree with him. But how does – how did this come about? Usually the cases we see come through by way of criminal forfeiture and a criminal action, and then if there's a civil forfeiture, there's a civil action for it. Yes. We're dealing strictly with the criminal action here? And, yes, and I apologize. This was a case that was prosecuted in our office in 2006, and my predecessor did the appellate briefing, and I'm really coming in quite last minute. And I learned – I tried to learn as much as I could to answer your questions, but I don't have the history. Thank you. Thank you. Thank you very much. Mr. Ehrl will give you a minute in rebuttal. I've used up all my time. I'll give you a minute. One minute. Go ahead, quickly. Greg Carter's PSR, paragraph 25, which the government did not object to, states how the restitution order was – the restitution amount was calculated, and it says – it gives the amount. This amount must be ordered as restitution, note that the items listed in the forfeiture and the actual amounts garnered from these items is the actual restitution. That the restitution and the amount of money garnered from the forfeited items is the restitution. And the government – and this Court's law says that if there's no objection to the PSR, that is the established fact of the case. Okay. Thank you very much. Thank you. Thank you both for your very helpful arguments in an interesting case. United States v. Carter is submitted. We will go watch United States v. Schiff. Yes, sir. May it please the Court.
judges: Zouhary, Wallace, Berzon